UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONALD FESSENDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CAUSE NO. 3:15-CV-370-WCL-CAN |
| | ) |
| RELIANCE STANDARD LIFE | ) |
| INSURANCE COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

On February 1, 2016, Plaintiff filed his Motion to Conduct Standard Discovery Pursuant to Rule 26 of Federal Rules of Civil Procedure in this case brought pursuant to Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendants filed a response to Plaintiff's instant motion to conduct discovery on March 1, 2016. Plaintiff's instant motion became ripe on March 11, 2016, when he filed his reply brief.

Once the Court entered its opinion and order denying Plaintiff's motion to apply the *de novo* standard of review in this case, the undersigned ordered the parties to complete supplemental briefing on the instant motion for discovery. [Doc. No. 30]. On October 20, 2016, Plaintiff timely filed his supplemental brief [Doc. No. 31] along with his proposed interrogatories [Doc. No. 31-1], his proposed request for production of documents [Doc. No. 31-2], and a 2007 law review article discussing the partiality of self-interested reviewers in claims benefits decisions challenged under ERISA [Doc. No. 31-3]. Defendants filed their timely supplemental brief in response [Doc. No. 32] along with a document entitled "Reliance Standard Claim Handling Statement of Principles ("the Reliance Principles") [Doc. No. 32-1]. In light of

the parties' briefing and the supplemental evidence presented, the Court now denies Plaintiff's motion for discovery for the reasons stated below.

I. **RELEVANT BACKGROUND**

In its opinion and order dated September 26, 2016, the Court concluded that Defendants substantially complied with the ERISA regulatory framework in its denial of Plaintiff's claim for disability insurance benefits. Accordingly, the Court held that Plaintiff's ERISA claim before this Court will be reviewed under the arbitrary and capricious standard typically applied in ERISA cases where a benefit plan contains a discretionary clause. *See* Doc. No. 29 at 3 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111(2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989))).

Ordinarily in ERISA cases where the arbitrary and capricious standard is applied, the reviewing court only considers the administrative record, or in other words, evidence before the claims administrator when the claim at issue was denied. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999); *see also Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). However, the Supreme Court in *Glenn* addressed concerns about the effect of structural conflicts of interest where the claims administrator both evaluates benefits claims and pays any benefits awarded. *Glenn*, 554 U.S. at 112–18. The Court concluded that such a conflict of interest constitutes "one factor among many that a reviewing judge must take into account." *Id.* at 116.

Here, Reliance Standard Life Insurance Company ("Reliance") is undisputedly both the administrator and payor of the long term disability benefits sought by Plaintiff and at issue in this case. Under the terms of Plaintiff's disability policy, Plaintiff would have received $1,250,000

in disability benefit payments had Reliance approved rather than denied his claim. Plaintiff alleges that Reliance hired Dr. John Brusch and Dr. Michelle Park as record reviewing physicians, both of whom are regular reviewers in the disability insurance industry, to review and deny his benefits claim. Additionally, Plaintiff points to rejections by two courts of Dr. Brusch's opinions finding claimants not to be disabled. Although not completely clear from Plaintiff's motions and subsequent briefs, Plaintiff seems to be suggesting that Dr. Brusch's and Dr. Park's history with and compensation from Reliance create a fair inference that a financial conflict existed and influenced Reliance's denial of his claim.

In light of these facts, Plaintiff asks the Court for permission to conduct discovery in order to determine the extent to which Reliance's conflict of interest infected his benefits claim. Specifically, Plaintiff seeks information regarding financial incentives, bias, or motivations that may be built into Reliance's claim process that favor denial of legitimate benefits claims. Plaintiff contends that information involving the claims management practices and financial motives of Reliance's employees and agents is relevant to any analysis of the effect of Reliance's conflict of interest on his claim. Additionally, Plaintiff indicates that he is "entitled to purs[u]e discovery to establish the nature of the relationship between Reliance" and Drs. Brusch and Park so that the Court can "competently assess whether they are truly 'independent.'" [Doc. No. 31 at 8]. Plaintiff also indicates his intent to conduct a Rule 30(b)(6) deposition of individuals most knowledgeable about Reliance's structural conflict of interest and the responses to the written discovery requests, if allowed by the Court.

Defendants, however, argue that such discovery is inappropriate in this case because Plaintiff has failed to show with specificity any instance of misconduct in the handling of his

3

claim. In addition, Defendants contend that good cause does not exist for the belief that discovery would reveal any procedural defect in Reliance's decision on Plaintiff's claim. Defendants support their argument with a document entitled "Reliance Standard Claim Handling Statement of Principles" ("Principles").[1] [Doc. No. 32-1]. Reliance's Principles document outlines Reliance's expectations for claim examiners, appeal reviewers, third party vendors who provide independent medical professionals as requested by Reliance, and the independent medical professionals themselves.

**II. ANALYSIS**

Under *Glenn*, Reliance's structural conflict of interest as both the administrator and payor of Plaintiff's benefits claim is one of many factors that this Court must consider in its deferential review of Reliance's benefits denial. *See* 554 U.S. at 116–17. The mere existence of the structural conflict also raises the question of whether discovery should be allowed to assist in the determination as to the extent to which the conflict impacted the review process used to assess Plaintiff's benefits claim. *See id.* However, discovery is not automatic when an insured asserts that a benefit decision may have been influenced by a conflict of interest. As stated in this Court's order dated October 6, 2016, "discovery is normally disfavored in the ERISA context," in keeping with the application of the deferential arbitrary and capricious standard. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805,814 (7th Cir. 2006); *see also Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009) (internal citations omitted).

---

[1] Reliance's Principles document includes no date or other indication of its effective date, no context within Reliance's claims management process, and no affidavit that might authenticate it. However, Plaintiff has not objected to the authentication of the Principles document. Therefore, the Court will assume it represents Reliance's policies regarding claims management as Defendants suggest.

Before *Glenn*, *Semien* defined a rather strict test for determining whether limited discovery was justified in the Seventh Circuit. Under *Semien*, limited discovery was only warranted in cases where claimants "identif[ied] a specific conflict of interest or instance of misconduct [and made] a prima facie showing that there [was] good cause to believe limited discovery [would] reveal a procedural defect in the plan administrator's determination." *Semien*, 436 F.3d at 815. *Glenn* brought into question the validity of the *Semien* framework without establishing explicit rules for determining when discovery should be allowed. *See Glenn*, 554 U.S. at 116 ("Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict.").

Most recently, the Seventh Circuit addressed the status of the *Semien* standard in *Dennison v. Mony Life Ret. Income Sec. Plan*, 710 F.3d 741 (7th Cir. 2013). Summarizing the effect of *Dennison* on the *Semien* standard, the Northern District of Illinois explained:

> In *Dennison*, the Seventh Circuit made clear that the Supreme Court's decision in *Glenn* "suggests a softening, but not a rejection" of the requirement established in *Semien* that a plaintiff must make a *prima facie* showing in order to be entitled to discovery in a case to be decided under the arbitrary and capricious standard. 710 F.3d at 747. The Court in *Dennison* re-affirmed that *Semien* remains good law in the Seventh Circuit after *Glenn* albeit with a "softening" of the *prima facie* showing required as a prerequisite to obtaining discovery. Accordingly, the Seventh Circuit seems willing to see what discovery the district courts will permit under a "softened" *Semien* standard before it lays down firm markers in that regard. *Id.*
>
> While the Seventh Circuit expressly declined to delineate "the contours of permissible discovery," it also implied that there are cases in which discovery may not be necessary. *Id.* Therefore, in light of *Semien*, as "softened" by *Dennison*, discovery still is not permitted in the run-of-the-mill case in the Seventh Circuit, and the two-part test established in *Semien* remains instructive. That means that to obtain discovery beyond the claim file in a case governed by the arbitrary and capricious standard, a plaintiff still must identify a specific

5

> conflict or instance of misconduct and make a *prima facie* showing that there is
> good cause to believe that limited discovery will reveal a procedural defect.
> *Semien*, 436 F.3d at 813–814. In light of *Glenn*, however, and given the
> softening of the *Semien* standard heralded by *Dennison*, a plaintiff's burden in
> making this showing is not onerous.

*Warner v. Unum Life Ins. Co. of Am.*, No. 12 C 2782, 2013 WL 3874060, at *2–3 (N.D. Ill. July 26, 2013). While the *Semien* burden may not as onerous as it once was, district courts within the Seventh Circuit have still denied discovery outside the record based on the unique circumstances of given cases.

For instance, the Eastern District of Wisconsin rejected a plaintiff's request for discovery where the plaintiff had sought discovery on both substantive and procedural grounds. *Gebert v. Thrivent Fin. for Lutherans Grp. Disability Income Ins. Plan*, No. 13-C-170, 2013 WL 6858531, at *4 (E.D. Wis. Dec. 30, 2013). As relevant here, the court reported that the plaintiff only presented evidence suggestive of disability that conflicted with the opinion of the administrator's independent medical professional in support of the request for discovery. *Id*. at *3. The court found this evidence insufficient to "raise the specter of impropriety" making the case a run-of-the-mill benefits challenge that failed to satisfy the *Semien* softened standard necessary to justify discovery. *Id.* In particular, the court found the plaintiff's lack of evidence to show a history of government fines or historical practice of denying similar claims compelling in denying discovery. *Id.*

Similarly, district courts in Illinois have rejected requests for discovery when plaintiffs failed to satisfy the threshold burden of identifying a specific conflict or instance of misconduct by the insurer. *Weddington v. Aetna Life Ins. Co.*, No. 15 C 1268, 2015 WL 6407764, at *3 (N.D. Ill. Oct. 21, 2015); *see also Dragus v. Reliance Standard Life Ins. Co.*, No. 15-C-09135,

6

2016 WL 3940106, at *2 (N.D. Ill. July 21, 2016); *Ryan v. Cargill, Inc.*, 73 F.3d 994, 1000 (C.D. Ill. 2014). Even this Court has denied discovery for the plaintiff's failure to make "a preliminary showing of misconduct, bias, or conflict of interest that might warrant discovery beyond the record on which the administrator relied." *Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, No. 1:13-CV-89, 2013 WL 5230240, at *5 (N.D. Ind. Sept. 16, 2013) (internal quotations omitted).

With that said, district courts in the Seventh Circuit have also concluded that discovery in ERISA cases involving an inherent structural conflict of interest is generally appropriate without applying the *Semien* standard, but only at the court's discretion after reviewing the plaintiff's proposed discovery requests to ensure that they were properly tailored in light of the facts of that case. *See Hall v. Life Ins. Co. of N. Am.*, 265 F.R.D. 356 (N.D. Ind. 2010); *but see Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389 (S.D. Ind. 2009) (noting that adhering to *Semien*'s two-prong standard contravenes *Glenn* because "it requires a claimant—without the benefit of any discovery—to show that a conflict exists and that the conflict motivated the administrator"). The Western District of Wisconsin concluded that requiring ERISA plaintiffs to meet the *Semien* "good cause" standard before allowing discovery related to inherent structural conflicts of interest would be too burdensome and then held that plaintiff could qualify for discovery by identifying federal cases where the court found the defendant carrier's claims evaluation process to be tainted. *Nemeth v. Andersen Corp. Welfare Plan*, No. 14-CV-270-JDP, 2014 WL 5802020, at *3 (W.D. Wis. Nov. 7, 2014).

These assorted outcomes in the district courts do not, however, eliminate the *Semien* standard completely. Instead, they shows that district courts have refused to open the doors of

ERISA discovery without some showing that something besides the administrative record is necessary to assess the effect of structural conflicts of interest on benefits claims. As such, the courts have appropriately applied the *Semien* standard as softened by *Glenn*. *See Dennison*, 710 F.3d at 747. A similar, particularized consideration of the unique evidence presented by Plaintiff in this case leads the Court to find discovery unwarranted.

First, Plaintiff cites *Spears v. Liberty Life Assur. Co. of Boston*, No. 3:11-CV-1807 (VLB), 2015 WL 1505844, at *32 (D. Conn. Mar. 31, 2015) (finding Dr. Brusch's report fatally flawed) and *Peterson v. Hartford Life & Acc. Ins. Co.*, No. 2:11-CV-10932, 2011 WL 6000776, at *5 (E.D. Mich. Nov. 30, 2011) (finding insurer's reliance on Dr. Brusch's report arbitrary and capricious) in what appears to be an attempt to discredit Dr. Brusch's opinions related to Plaintiff's claim. Plaintiff does not develop any such argument further. Moreover, Defendants cite six other federal cases where Dr. Brusch's opinions were affirmed. *See* Doc. No. 32 at 8 (collecting cases). Such a record may be relevant to the Court's ultimate decision on the merits of this case. However, Plaintiff has failed to show even an inference of misconduct by Reliance in the handling of Plaintiff's claim with these two citations related to the success of Dr. Brusch's opinions in past cases.

Second, Plaintiff implies that Drs. Brusch and Park have served as independent medical reviewers for Reliance many times and that Reliance's compensation created a financial incentive to deny Plaintiff's claim. The Court agrees that such facts could indeed raise a fair inference that the financial conflict influenced Reliance's denial of Plaintiff's claim. *See Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860 n.5 (7th Cir. 2009); *Maiden v. Aetna Life Ins. Co.*, No. 3:14-CV-901, 2016 WL 81489, at *2 (N.D. Ind. Jan. 6, 2016);

*see also Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902–03 (9th Cir. 2016). However, Plaintiff did not have access to Reliance's Principles document when he suggested this possible inference based Dr. Brusch's and Dr. Park's history with Reliance. Through the Principles, which document defines the parameters of Reliance's relationship with its independent medical professionals, Plaintiff's inference that financial incentives influenced the decision on his claim is mitigated.

Specifically, the Principles establish that Reliance does not hire its own medical doctors for independent reviews, but instead pays a third-party vendor to provide independent medical reviewers. [Doc. No. 32-1, ¶ 8]. As a result, Reliance did not pay Drs. Brusch or Park creating a relational distance showing true independence.[2] The Principles further reduce any inference of undue influence by showing that Reliance chooses its vendors "based upon quality, accuracy, and timeliness of reports [and not] based upon the outcome of prior reviews nor are the outcomes of independent reviews tracked." [*Id.* at ¶ 10]. Lastly, the Principles reflect Reliance's intentional reduction of potential financial bias through its vendor agreement, which requires all medical professionals maintain active medical practice or academically affiliations so that "at least a portion of their . . . income is derived from a source unrelated to insurance examinations or file reviews." [*Id.* at ¶ 9]. With no reason to doubt that Reliance deviated from these Principles in their handling of Plaintiff's claim, the Court is not persuaded that Reliance's relationship with Drs. Brusch and Park create sufficient risk of financial bias to justify discovery beyond the administrative record.

---

[2] The Court accepts Defendants' assertion that Reliance did not pay Dr. Brusch or Dr. Park based on Defendants' reference to, and willingness to produce, documentation of third-party vendors to both doctors as included in the administrative record. *See* Doc. No. 32 at 8, n.1.

Third, Reliance's Principles document demonstrate that its structural conflict of interest will be a less important factor in the Court's ERISA review of Plaintiff's denial of benefits. In *Glenn*, the Supreme Court offered guidance to courts assessing the impact of conflicts of interest in ERISA reviews. The Court stated:

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Glenn*, 554 U.S. at 117. Here, the Principles not only show Reliance's active steps to eliminate any bias affecting independent medical professionals, as described above. The Principles also ensure that internal claim examiner and appeal reviewers (1) are not compensated in any way or evaluated based on their record of approved or denied claims; (2) have no access to disability reserve information or the profitability of any of Reliance's business units; (3) do not report to and are located separate from the financial department; (4) are reviewed only on promptness and accuracy in decisionmaking; and (5) must attend specific claims handling training annually. [Doc. No. 32-1, ¶¶ 1–5]. With these efforts, Reliance has minimized any potentially negative effect of the inherent conflict of interest that exists in their business structure.

The evidence in the record before this Court, however, does not explicitly address whether Reliance has exhibited a pattern of biased claims administration despite the Principles. Discovery into that question would require production of information related to other claimants' records and to Reliance employees. The value of such production would not outweigh the

10

burden that would be imposed on the privacy interests of the other claimants and employees. Indeed, such production is unlikely to reveal any evidence of misconduct or bias given the expectations set forth in Reliance's Principles document. Accordingly, Plaintiff's request for discovery here amounts to a fishing expedition for evidence of bias or misconduct where the record shows no hint that Reliance's structural conflict of interest affected the decision on Plaintiff's benefits claim. Therefore, the remote chance that a conflict of interest affected Plaintiff's claim is too attenuated to warrant discovery in this ERISA case where the Court will be applying the deferential arbitrary and capricious standard.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to conduct standard discovery [Doc. No. 14]. The Court **ORDERS** the parties to file a revised Rule 26(f) discovery plan by **December 29, 2016**.

**SO ORDERED.**

Dated this 15th of December, 2016.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge